The City of Indianapolis v. Kingsbury et al.

Filed April 4, 1885.

---

No. 11,599.

THE CITY OF INDIANAPOLIS v. KINGSBURY ET AL.

STREETS.—*Plats.*—*Dedication by Commissioners in Partition Proceedings.*—It is competent for commissioners in partition proceedings, acting under the orders of a court of competent jurisdiction, to make a subdivision of the land into lots, and to dedicate streets and alleys to the public on the plats made by them.

The City of Indianapolis *v.* Kingsbury *et al.*

SAME.—*Guardian's Authority to Dedicate.*—A guardian of an infant has authority, when so ordered by a court of competent jurisdiction, to subdivide the lands of the ward and to dedicate streets and highways to the public.

SAME.—*Plat.—What Indicates Dedication.*— When the shape, lines and dimensions of a space marked on a recorded plat indicate that it is a street, there is a valid dedication of the space so indicated, although there are no formal words of dedication, and although the space is not in express terms designated as a street.

SAME.—*Continuing Way on Second Plat.*—Where the land owner makes and records a plat, on which there are lines marking a way, and he afterwards makes and records a second plat on which the way is continued of the same width as on the first plat and is marked "Highland street," and lots are sold with reference to such plats, it will be conclusively presumed that the way throughout its entire length is a public one.

SAME.—*Rights of Abutting Owners.*—The conveyance of land bounded by a street conveys the fee to the center of the street, and also conveys an interest in the street, as a street, of which the abutter can not be deprived except by seizure under the right of eminent domain.

SAME.—*Plat.—Right of Lot Owners to Streets.*—Purchasers of lots have a right to have all the streets marked on the plat by which they purchased kept open as streets, and their rights are not confined to the part of the street in front of the lots purchased by them.

SAME.—*Implied Dedication.*—It is not necessary that a dedication should be evidenced by a writing, but it may be presumed from the acts and conduct of the owner.

SAME.—*Intent.*—It is necessary, to constitute a valid dedication, that there should be an intent to dedicate the land to a public use, but the intent which the law regards is that which the open acts of the owner indicate and not a secret intent.

SAME.—*When Intent Inferred.*—Where the acts and conduct of the land-owner are such as fairly and naturally lead to the conclusion that he intended to dedicate the land to the public use, and others have in good faith acted upon his open acts and conduct, he will not be permitted to aver that there was no dedication, but the law will conclusively infer that he intended what his acts and conduct indicated.

SAME.—*Plat.*—Where ways are shown on recorded plats and there appear as streets, they will be so regarded, unless there is in the plats an express provision to the contrary, and no acts or conduct of the owner can change the effect of the dedication evidenced by the plat.

SAME.—*Intent to Dedicate.— When it may be Rebutted.*—An intention to dedicate may be rebutted when there is an implied dedication, but not when there is an express dedication.

SAME.—*Rebutting Presumption of Dedication.—Evidence.*—One of the usual

methods of rebutting the presumption of dedication is by evidence that a gate was swung across the way, but this will not rebut an intent to dedicate in case of an express dedication, nor will it do so in cases of implied dedication where the other evidence in the case shows that there was an intent to dedicate and that rights were acquired upon the faith that such an intent did in fact exist.

SAME.— *User.— Time.*—User by the public, with the consent of the owner, for such length of time that public accommodation and private rights might be materially affected by an interruption of the enjoyment, is sufficient to raise a presumption that the owner intended a dedication to the public.

SAME.—*Change of Private Way to Public.*—A private way, no matter how long or how much used by the public, can not be transferred into a public way without the consent of the owner, but when the owner does consent, and the public accepts, the change may be made.

SAME.—*Partition.—Married Woman.*—Where proceedings in partition are pending, and one of the parties marries, the validity of the dedication made by the commissioners will not be affected by such marriage.

SAME.—*Married Woman.*—A dedication may, in some cases, be presumed against a married woman, although there is no formal deed executed by herself and husband.

SAME.—*Questions of Law and Fact.*—Whether land was or was not dedicated to the public is not a conclusion of law, but is a question of fact to be decided upon the evidence.

PRACTICE.—*Special Finding.—Conclusions of Law.*—Conclusions of law erroneously cast into the finding of facts do not control, for the court acts upon the facts found.

From the Shelby Circuit Court.

*C. S. Denny,* for appellant.

*G. W. Galvin, E. P. Ferris, W. W. Spencer* and *J. S. Ferris,* for appellees.

ELLIOTT, J.—The appellees claim title to a strip of land in the city of Indianapolis, and brought this action to quiet title. On their application the venue was changed to the Shelby Circuit Court, and the case comes to us upon the special finding of facts and conclusions of law stated by that court.

The character of the case made it difficult to make a clear and concise special finding, and that made by the court is very lengthy and much confused, for it blends matters of evidence with matters of fact, and mingles them with matters of law.

It has been a task not free from difficulty to climinate immaterial matters and extract the material facts from the mass, but we have gathered the material facts and condensed them in the following synopsis: Noah Noble died the owner of the eighty-acre tract of land within which the strip claimed by the appellees is situated, and by his will gave his wife a life-estate, and to the children of a deceased daughter the fee in the land passed by the will and by subsequent partition; those children are Dorman, Preston and Susan Davidson, and Catharine Miller, now a married woman. In 1866 a partition was adjudged between the heirs of Noah Noble, and the land, of which the strip in controversy forms a part, was set off to Susan, Noah and Catharine Davidson, except that part of the land which lies south of Market street. Before the partition was made eight acres were sold by order of the court upon the petition of the guardian, and embraced in this eight-acre tract is that part of the strip here in dispute, which extends north from Washington street three hundred and thirty-three feet. To this sale Dorman N. Davidson, an adult devisee, consented, and, at the same term of court, he joined the guardian in petitioning the court to direct that the eight acres should be subdivided into town lots before sale, and upon this petition an order was made directing the subdivision, and also directing that a plat should be made. Pursuant to this order a plat was made and reported to the court, and a proper order was entered approving it. The plat was acknowledged and recorded according to law. In the explanation annexed to the plat it was recited that it embraced eight acres, more or less, and that Market street, sixty feet in width, was donated to the public, but no mention was made of the strip here the subject of dispute. The plat, however, shows the dimensions of the lots laid out, and shows, also, a strip fifty feet in width extending north from the National Road, or what is now called Washington street, to Market street. This strip appears on the plat as a way, but it is not designated as a public street, nor is it numbered as a lot, although the lots on

each side of it are appropriately and regularly numbered. The guardian of the minor devisees and Dorman N. Davidson sold lots numbered one to seven inclusive, as shown by the recorded plat, to divers persons, and these deeds were duly reported to the court and received its approval. Under these conveyances the grantees have entered into possession, and some of them have made valuable and permanent improvements. On lots designated on the plat as number two and number three houses were erected on the east and on the west side of the fifty-foot strip as early as the year 1866. This strip was never sold.

The finding recites that there was an agreement between the guardian and Dorman N. Davidson that this strip should be reserved as a private way, but there is no finding that this was known to the court, nor is there any finding that the city, or any of the purchasers of lots, had actual or constructive notice of this agreement. About the time the petitions referred to were filed, the devisees of Noah Noble had opened up a drive-way over the line of the strip in dispute, from the family residence to the National Road, and a gate was swung across the way on the north side of the National Road, but in 1866 this gate was discontinued. In 1863 the purchasers of lots two and three built fences along the line of the street for the purpose of enclosing their lots. In April, 1868, Susan Lavalette Davidson, Catharine Davidson, now Catharine Miller, the appellee, and Dorman N. Davidson, instituted proceedings for partition of the lands lying north of Market street, and, in December of that year, a decree of partition was entered, and it was also decreed that the commissioners appointed to make partition should lay the land off into lots, streets and alleys. Pursuant to this decree the land was laid off and a plat made, this plat received the approval of the court and was duly admitted to record. On this plat is a way designated as Highland street, extending north from Market street and continuing in a direct line, and of the same width as the way which appears

on the plat of June, 1863, as extending south from Market street to the National Road. It appears that on the 31st day of December, 1868, the parties inspected and approved the plat made by the commissioners. At this time the appellee Catharine Miller was a married woman, having been married in October of that year. After the gate on the north side of the National Road was abandoned, in 1866, another gate was placed across the way at a point about two hundred feet north of Market street, and this gate remained until the autumn of 1869, when it was abandoned. The finding states that the purpose for which this gate was placed across the way was to keep cattle off the Davidson lands. Since that time there have been no obstructions across the way, and the whole length of Highland street, from the National Road to the northern terminus of the street, was freely used by the public. Previous to 1869, a lot had been sold to James L. Mitchell, situated on the corner of Market street, and, with the exception of the cost of improving in front of that lot which was paid by Mitchell, Dorman N. Davidson graded and gravelled, at his own expense, Highland street from Market street north. As early as 1876, James G. Douglass constructed a stone sidewalk along the front of lot two, then and for some time prior to that date, owned by him. Prior to the year 1869, the city of Indianapolis constructed a board sidewalk along the east side of Highland street, and diagonally across some open lots, for the convenience of children attending a public school. In 1871, the city constructed a large public cistern at the intersection of Market and Highland streets for use of the fire department of the municipality. James L. Mitchell bought his lot in 1869, and bought with reference to the strip now called Highland street, as a public street, and in 1877, all of the devisees of Noah Noble joined in a deed to Mitchell, describing his lot as bounded by Market and Highland street, and a like mention of the latter street is made in a deed to James G. Douglass, executed in September, 1877, and in May, 1873, Mrs. Miller

and her husband joined in a deed conveying to the city land for the purpose of widening Ohio street, and in this deed reference is made to Highland street.   In April, 1881, Maria G. Cooper bought from Joseph L. Fisher, a remote grantee of Mrs. Miller and her associate owner, a part of lot two in the subdivision of 1868, and on that lot Mrs. Cooper built a house to front on Highland street, with a side front on Ohio street, and there are no other means of egress or ingress to and from the main front except Highland street. A public school house was erected by the city in 1878, about three hundred feet east of Highland street.   This school house is built of brick, is two stories high, contains eight rooms, and is the only school house in the school district. Highland street affords the most convenient means of going to and from the school house, and if it is closed a great number of children will be compelled to travel about three squares out of their way to reach it.

Ordinances for the improvement of the street from the National Road north were introduced in the common council, but, owing to a disagreement of the adjoining property-owners as to the grade which should be established, they were not adopted.   A remonstrance signed by Mrs. Miller and the other devisees of Noah Noble was addressed to the common council in 1878, in opposition to a proposition to improve the street.   This remonstrance speaks of Highland street as a public street of the city, calls it by that name, and protests against bouldering the gutters as extravagantly expensive, and protests upon the further ground that there are suits pending to determine the title to adjoining lots, but no question is made as to the highway being one of the public streets of the city; on the contrary that fact is fully affirmed.   No taxes have ever been paid upon the strip in dispute since the making and recording of the plat of 1863.   All of the devisees of Noah Noble, on the 3d day of November, 1881, united in a deed purporting to convey the strip of land from the National Road north to George W. Galvin and Mary K. Galvin,

and these parties afterwards joined in a deed professing to convey it to Sarah S. Kingsbury, and she afterwards executed a deed for the one undivided half to Catharine Miller.

Conclusions of law were thus stated:

"1st. As to all that land in controversy north of the south line of Market street, I find that the plaintiffs are not the owners thereof, but that the same has been dedicated to the public for street purposes.

"2d. As to all that part of the land lying south of the south line of Market street, and lying between Market street and Washington street, I find that this real estate has never vested in the public in any way, and that the plaintiffs are the owners in fee, and that the defendant is asserting an unfounded title thereto, adverse to the plaintiffs, and that plaintiffs' title thereto should be quieted."

The appellant assigns error upon its exception to the second conclusion of law, and the appellees allege cross errors upon the first conclusion.

The first conclusion of law is clearly right. The plat was made by commissioners acting under the order of the court, and upon the petition of the adult owner and some of the infant owners, and the plat made by the officers of the court, pursuant to its order, was approved, after inspection, both by the court and the parties. We can see no reason why a court possessing plenary jurisdiction may not direct a subdivision of land into town lots in cases where the adult owners consent, and it is made to appear that such a course will enhance the value of the property and promote the interests of the infant owners. It is perfectly clear that if adult tenants in common should, without objection, suffer an order to be entered directing that the land be laid out into town lots, the plat made by the commissioners pursuant to the order would be operative against them, and a decree in partition is just as effective against infants, when they are properly in court and duly represented by guardian, as it is against persons of full age. Tyler Infancy and Coverture, p. 175. A court having

jurisdiction in matters of partition, and having jurisdiction of the persons of the parties, may order the land to be laid out into lots, and highways to be dedicated to the public. *Earle* v. *Mayor, etc.*, 38 N. J. Law, 47; *Clark* v. *Parker*, 106 Mass. 554. But we need not rest our decision upon adjudged cases alone, for we have a statute fully recognizing the principle declared in the adjudged cases. Acts 1859, p. 159. If, in any case, there could be doubt as to the validity of such a decree as that rendered in the partition suit of 1868, there can be none in a case where the decree has been confirmed by unequivocal acts and conduct, and here the confirmation of the course of the commissioners and the decree of the court has been manifested in the amplest and most satisfactory manner, both by conduct and by conveyances.

The questions presented by the second conclusion of law stated by the court are essentially different from those presented by the first. The plat of the addition bounded on the south by the National Road, and on the north by Market street, was made by order of the court and by the guardian of infant owners of land. We think that a guardian, acting under the order of a court of competent jurisdiction and proceeding in conformity to the order of the court, has authority to lay out additions to cities and towns, and if the authority to lay out such additions does exist, then there must also exist the incidental authority to dedicate lands to the public for streets and alleys. It would be illogical and unreasonable to affirm the existence of the principal and yet deny the existence of the incidental power. Courts have ample authority over the estate of infant wards, and may direct the sale of their real property when it will promote their welfare, and within this general and comprehensive authority is the implied one that the court may determine what course will best subserve the interests of the ward, and this course it may direct the guardian to pursue. To be sure, the provisions of the statute must govern, and the discretion of the court can not be exercised in such a manner as to infringe upon any statutory

rule, but in directing that plats be made and streets and alleys be laid out the court having jurisdiction of the matter of the guardianship does not contravene any statute; on the contrary it obeys the legislative enactment. Acts of 1853, p. 74.

The plat executed by the guardian in June, 1863, exhibits the strip of ground extending from the National Road north to Market street, and it is represented as a way, and its width is stated to be fifty feet. It is not numbered as a lot, nor does it correspond in form or dimensions with the lots which the plat exhibits. It is true that it is not named as a street, but its shape, situation and dimensions show it to be a way of some kind. We know, as matter of general knowledge, that the boundaries of lots, of streets, alleys and other ways, are usually indicated upon plats by appropriate lines, and we can, therefore, determine from the face of the plat before us that the lines marking the boundaries of the strip indicate a way of some kind. It is not necessary that in the explanation attached to a plat there should be a minute description of all the ways laid out upon it, for it is sufficient if the lines and figures used indicate the existence of a way. Lines found on a plat and representing the boundaries of a part of the subdivisions it was intended to exhibit are to be taken to mean something, and are not to be regarded as having been used without a purpose. The lines upon this plat so clearly indicate a way that the only doubt that can possibly arise is as to its character, whether it is a public or a private one, for, to affirm that a way of some kind is not designated, is to affirm that the lines marking the boundaries of the strip were used without a purpose, and this would be an affirmation involving a palpable violation of logical rules and legal principles. The reasonable presumption is, that a way, appropriately designated by lines drawn from point to point, which appears upon a plat executed for the purpose of being placed upon record as exhibiting an addition to a city, is a public way, unless, indeed, there is something in the plat

itself exhibiting a contrary intention.   There is nothing in
the plat of 1863 manifesting an intention to make the way a
private one, and, as there is no indication of a purpose to
make the way anything else than a public highway, the pre-
sumption from the execution of the plat professing to show
an addition to the city should be that the way was dedicated
to public purposes.   It has been held over and over again
that marking highways on a plat of an addition to a town or
city and selling lots with reference to them constitute a ded-
ication.   *Faust* v. *City of Huntington,*  91 Ind. 493 ; *Conner·*
v. *President, etc.,* 1 Blackf. 43 ;  *City of Evansville* v. *Page,* 23
Ind. 525 ;  *City of Logansport* v. *Dunn,* 8 Ind. 378 ; *Doe* v.
*President, etc.,* 7 Ind. 641 ; 2 Dillon Munic. Corp. (3d ed.),
sec. 640.

The purpose for which this plat was made and the manner
in which it is prepared indicate, at least presumptively, that
the ways marked on it are public and not private ways.   In
*Hanson* v. *Eastman,* 21 Minn. 509, the plat showed a tri-
angular piece of ground not numbered as a lot, nor designated
as a street, alley, park or public square, and it was held that
it evidenced a dedication of the ground for public purposes,
and that the construction of the plat was a matter of law for
the court.   The plat executed by the land-owner in the case
of *Yates* v. *Judd,* 18 Wis. 118, designated lots by numbers,
but left a space not so designated, and represented it by curved
lines corresponding to the bend of a stream, and it was held
to import a dedication to the public.   In *Sanborn* v. *Chicago,
etc., R. W. Co.,* 16 Wis. 19, some of the streets were named and
designated, and lots numbered, but the particular parcel of
ground was not described as a street, and yet the court held
that an inspection of the plat showed that there was a dedica-
tion to the public.

If it be conceded that the face of the plat of 1863 leaves
it uncertain whether the way was laid out as a public or pri-
vate one, then resort should be had to the conduct of the
owners to determine the true character of the way.   The pub--

lic were permitted to use the entire way from 1866 without let or hindrance, and prior to that time the only barrier was a gate swung across the south end of the strip of land. Public improvements were made with reference to the way as a public street, and lots were sold with reference to it as a street. The street designated on the plat made by the commissioners in December, 1868, and approved by the parties, showed a continuation of the way as Highland street. A building was erected fronting upon it as a public thoroughfare. In the remonstrance filed against improving it, the grantors of the appellees, as remonstrants, described it as a street, and did not question the right of the city to improve it, but protested against the character of the improvement. The strip was never offered for sale, and no taxes were ever paid on it by the proprietors. Some of these facts exert a peculiarly important bearing upon the question here in dispute. The plat of 1868 in express terms designates the continuation of the way as Highland street, and such an act the Supreme Court of Wisconsin held sufficient to outweigh the figures placed on the plat, and to make it perfectly obvious that it was the intention that the street should be continued as of the same width throughout. Sanborn v. Chicago, etc., R. W. Co., supra.

The immunity from taxation is attributable to the fact that the community and the owners regarded it as a public highway, and, for that reason, not taxable. The conveyance of lots bounded on a public way conveys the fee to the grantee to the center of the street. Terre Haute, etc., R. R. Co. v. Rodel, 89 Ind. 128; S. C., 46 Am. R. 164; 2 Dillon Mun. Corp. (3d ed.), p. 632, auth. n. Such a conveyance vests in the grantee a right as an abutter of which the State itself can not divest him, except upon the payment of just compensation assessed according to law. State v. Berdetta, 73 Ind. 185 (38 Am. R. 117); Common Council, etc., v. Croas, 7 Ind. 9; Haynes v. Thomas, 7 Ind. 38; Tate v. Ohio, etc., R. R. Co., 7 Ind. 479; Protzman v. Indianapolis, etc., R. R. Co., 9 Ind. 467;

*Cummins* v. *City of Seymour*, 79 Ind. 491, *vide* p. 498 (41 Am. R. 618) ; *Ross* v. *Thompson*, 78 Ind. 90, *vide* p. 94.

The sale of lots implies that the purchaser shall have the use of the street as a street, and his rights are not confined to the space immediately in front of the ground bought by him, but extend to the street as it appears upon the plat. It would be of little benefit to the purchaser to confine his rights to the narrow limits of the street immediately adjoining his lot, and the law does not circumscribe it within such narrow bounds. Little good would it do a purchaser to have an open street directly in front of him but blocked on either side. The law goes much beyond our statement, for it entitles the owner to all the streets and ways as such laid out upon the plat by which he purchases. So runs the great current of judicial opinion. *Rowan* v. *Town of Portland*, 8 B. Mon. 232 ; *Trustees of Augusta* v. *Perkins*, 8 B. Mon. 207 ; *City of Winona* v. *Huff*, 11 Minn. 119 ; *Huber* v. *Gazley*, 18 Ohio, 18 ; *Town of Derby* v. *Alling*, 40 Conn. 410 ; *Moale* v. *Mayor, etc.*, 5 Md. 314. This principle is recognized in *City of Logansport* v. *Dunn*, 8 Ind. 378, and in *City of Evansville* v. *Evans*, 37 Ind. 229, *vide* p. 236.

In addition to these important facts, all tending to strengthen the presumption created by the plat, that the strip was dedicated to public purposes, there is the express and unequivocal recognition of the way as a street in the remonstrance addressed to the municipal legislature. If we should apply to this case the rule which applies in ordinary contracts, even where there has been neither such express representations, nor such strong implication from conduct as there is here, and should also treat the plat as ambiguous, we should be compelled to declare that the plat evidences a dedication, for it is a settled rule that where parties by their conduct and acts have given a construction to contracts, the courts will adopt it as the true construction. *Willcuts* v. *Northwestern M. L. Ins. Co.*, 81 Ind. 300 ; *Reissner* v. *Oxley*, 80 Ind. 580 ;

*Johnson* v. *Gibson,* 78 Ind. 282; *Aimen* v. *Hardin,* 60 Ind. 119; *Vinton* v. *Baldwin,* 95 Ind. 433, *vide* p. 436.

We fully agree with counsel for the appellees that an essential element of dedication is the intent of the owner to devote his land to a public purpose, and we unhesitatingly affirm that without such an intention it is impossible that there should be a valid dedication. *President, etc.,* v. *City of Indianapolis,* 12 Ind. 620; *Mansur* v. *State,* 60 Ind. 357; *Bidinger* v. *Bishop,* 76 Ind. 244; 2 Dillon Munic. Corp. (3d ed.), section 636. But the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards. Acts indicate the intention, and upon the intention clearly expressed by open acts and visible conduct the public and individual citizens may act. Nor is it to mere secret agreements or arrangements unknown to public officers and to purchasers of lots that courts are to look. What they do look to, and what good conscience and fair dealing require they should regard, is the conduct of the land-owner; that is open to the scrutiny and knowledge of the community and its members. In speaking of a similar question we said: "If a land-owner, by open and visible acts, unequivocally indicates to the public and to citizens that he intended to, and did, throw open a street to the public, and the citizens and public have acted upon the faith that there was a dedication, the law will treat the acts of the owner as constituting an irrevocable dedication." *Faust* v. *City of Huntington, supra.* In *Gwynn* v. *Homan,* 15 Ind. 201, it was said, in speaking of a dedication, that: "Such fact may be shown by proof of acts on the part of the owner, such as selling lots on opposite sides of a strip of ground suitable for a street or highway, and standing by and seeing it used by the public as such; or standing by and permitting such user, for a time, and under circumstances, evidencing a dedication." The court said in

*City of Columbus* v. *Dahn*, 36 Ind. 330, that "We think that the question, whether a person intends to make a dedication of ground to the public for a street or other purpose, must be determined from his acts and statements explanatory thereof, in connection with all the circumstances that surround and throw light upon the subject, and not from what he may subsequently testify as to his real intent in relation to the matter. And this is on the principle that the public have a right to suppose that a man intends what his outward conduct and statements indicate, inasmuch as they can not discover his intention in any other manner. Men, in all the affairs of life, are presumed to intend what is fairly and clearly indicated by their acts and conduct; and where the rights of the public or third parties are concerned they have a right to act upon such presumption." A strongly illustrative case is that of *Lamar County* v. *Clements*, 49 Texas, 347, where it was said: "But where the dedication is clearly manifested by unequivocal acts or declarations, upon which the public, or those interested in such dedications, have acted, the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, is of no consequence." In the case of *City of Denver* v. *Clements*, 3 Col. 484, the court said: "If there exist an actual intent to reserve any portion of the lands so platted into streets, otherwise than by express reservation on the plat, certainly it should be made manifest in some manner not only of equal certainty, but of equal publicity as the plat, otherwise an actual intent can not be permitted to prevail against an intent on which the law will and must insist, as being shown by unequivocal acts upon which the public had a right to rely." We refer to the following authorities as supporting our position, regretting the lack of space and time to comment upon them. *Barraclough* v. *Johnson*, 8 Ad. & E. 99, see opinions of LITTLEDALE and COLERIDGE, JJ.; *Elizabethtown, etc., R. R. Co.* v. *Combs*, 10 Bush (Ky.) 382; *Noyes* v. *Ward*, 19 Conn. 250; *City of Denver* v. *Clements, supra; Gamble* v.

*City of St. Louis,* 12 Mo. 617 ; 1 Addison Torts, sec. 302 ; *Morgan* v. *Railroad Co.,* 96 U. S. 716.

The intention to dedicate is here inferable from the conduct of the land-owners, and is unequivocally manifested by their open conduct, upon which the citizens and the public had a right to rely, and the secret intention or the private agreement of the owners among themselves, that the way should be a private one, can not prevail against the force of the conduct and acts upon which the public and the citizens relied.

An intention to dedicate may be rebutted in cases where an implied dedication is relied on, but where there is an express dedication, evidenced by a properly executed and recorded plat, upon which the public and the purchasers of lots have acted, the intention can not be rebutted and acquired rights overthrown. *City of Denver* v. *Clements, supra.* If we should treat the case as one of express dedication by the plat, then this proposition would effectually dispose of this branch of the case.

If we treat the case as one of implied dedication, the intention to dedicate, so clearly manifested by the acts and conduct to which we have referred, is not rebutted. Swinging a gate across a way is an appropriate method of giving notice that the way is a private and not a public one, and in many, perhaps in most, cases of implied dedication such an act would be sufficient to rebut an intention to dedicate. 2 Smith's Leading Cases, 147. But where, as here, the facts clearly and unequivocally show an intention to dedicate, and show rights justly acquired by third persons and the public, upon the faith that the land was dedicated for a highway, such an act will not defeat the dedication; it will be treated as a mere temporary use of the highway, and not as a divestiture of the rights of the public, or as an announcement of an intention to maintain a private and not a public way. *Boyer* v. *State,* 16 Ind. 451.

The gate was, as the special finding shows, abandoned in 1866, and in 1869 another was swung across the way north of

Market street. Since that time the public has used the way as a street, private rights were acquired on the faith that it was a street, public improvements were made on the faith that it was a street, conveyances were made recognizing it as a street, and in the remonstrance addressed to the common council in 1878 the existence of the street was deliberately and unequivocally affirmed. These facts are of controlling importance, and fully authorize the conclusion that even if there was no street in existence prior to the year 1866, there has been one in existence from that time. These facts show, with great force and clearness, that the owners of the fee created the easement, and that the public accepted it, so that going no further back than 1866, and leaving out of consideration the important occurrences of preceding years, there are facts abundantly sufficient to establish a dedication to the public. It does not require any specific period of user to constitute a valid dedication. We have in our own reports very many cases in which a user, with the knowledge of the owner, for a much shorter period of time than that which elapsed between the year 1866 and the assertion of a claim in this case, was held to make an effectual dedication. In the case which counsel for the appellees cite as favorable to their view, it was said: "The use of land for a highway for such length of time that public accommodation and private rights might be materially affected by an interruption of the enjoyment, is sufficient to raise a presumption that the owner intended a dedication to the public." *Bidinger* v. *Bishop*, 76 Ind. 244.

This statement of the rule is quite as favorable to the appellees as any that can be found in our reports, and yet it is sufficient to decide the point against them. Stronger cases than the present are found in our reports, and yet the ruling has invariably been in favor of the public. *Carr* v. *Kolb*, 99 Ind. 53; *Faust* v. *City of Huntington, supra; Green* v. *Elliott*, 86 Ind. 53; *Ross* v. *Thompson*, 78 Ind. 90; *Summers* v. *State*, 51 Ind 201; *Holcraft* v. *King*, 25 Ind. 352; *Fisher* v. *Hobbs*, 42 Ind. 276; *City of Evansville* v. *Evans*,

37 Ind. 229; *State* v. *Hill*, 10 Ind. 219; *Hays* v. *State*, 8 Ind. 425. The facts show, with convincing force, that the owners of the land assented to the use of the strip of ground as a public street and that they not only assented to the acquisition of private rights with reference to it as a street, but they themselves created these rights. In no case could assent be more clearly shown even though we reckon the time of the public user from 1866, and give no heed to what occurred anterior to that date.

A private way can not be transformed into a public highway by user by the public, no matter how long continued. A private way, notwithstanding a general use by the community, remains as the donor intended to dedicate it at the time it was laid out, unless he assents to its transformation into a public highway. While the way can not be changed by an unilateral act it may be changed if the public and the land-owner unite in assenting to the change. It is unreasonable to assert that the owner of the fee may not change the easement from a private to a public one where all others interested concur in his acts. The question here is, not whether the public may without the assent of the owners change the character of the servitude, but whether such a change may be made where the owner assents. We think it perfectly clear that, granting (but by no means deciding) that the way was originally a mere private easement, it has been for many years treated by all the interested parties as a street of the city, and the conduct and acts of the owners of the fee have been such as to supply the clearest and most satisfactory proof of assent.

What we have said disposes of all of the questions arising on the facts, and also disposes of the merits of the case as to all the interests involved except those of Catharine Miller. It is asserted by her counsel that the fact that she became a *feme covert* in October, 1868, prevents the acquisition of any easement in her lands. We understand counsel to base their argument upon the general doctrine that a married woman

can not convey her land, except in cases in which her husband joins in the deed, and that she could not, prior to the act of 1881, lose title to her land by an estoppel *in pais.* This statement of the general rule is correct, and if this case is governed by that rule then the second conclusion of law, as far as it concerns the rights originally vested in Mrs. Miller, may be sustained, but in our judgment this case is not governed by that general rule. There are several reasons which very satisfactorily support this conclusion.

The plat of 1863 was fully confirmed by that of 1868, and conceding the former to be ambiguous as regards the character of the way, that ambiguity was removed by the latter and the acts subsequently done under both plats. This we say because the suit for partition was commenced by Mrs. Miller before her marriage, and the proceedings were confirmed by her after marriage. The proceedings in partition were not discontinued by her marriage, and the decree rendered in that suit related back to the commencement of the proceedings, and bound all interests acquired after the suit was instituted. This proposition rests upon the familiar doctrine that parties and privies who acquire rights while a suit is pending are concluded by the judgment pronounced. The estoppel worked by the judgment rendered on the petition of the guardian in 1863, and the judgment rendered on the petition of Mrs. Miller and her brother Dorman and sister Susan, in 1868, is an estoppel by judgment, and we suppose that no lawyer doubts that the estoppel of a judgment operates upon a *feme covert.* The fact that the plaintiff in a partition suit is an infant does not affect the validity of the decree, for partition may be enforced by, or against, persons under age. *Schee* v. *McQuilken,* 59 Ind. 269; *Richards* v. *Richards,* 17 Ind. 636; Freeman Cotenancy and Partition, sec. 457. As the court had jurisdiction of the parties and the subject-matter, its decree would repel a collateral attack even though erroneous, but the case here is stronger than a case of that char-

acter, for there is nothing showing that the decree was erroneous.

A married woman may by her acts give construction to a contract where there is a doubt as to its effect, and where there is a mistake in the description of the property conveyed it may be corrected, notwithstanding her opposition. *Hamar* v. *Medsker*, 60 Ind. 413; *Carper* v. *Munger*, 62 Ind. 481; *Wilson* v. *Stewart*, 63 Ind. 294; *Styers* v. *Robbins*, 76 Ind. 547.

If a court may compel parties to make a contract justly express their intention in this respect, there is no reason why their own acts done under it may not be treated as giving to it a just construction and effect. We are not unmindful of the rule, existing prior to the recent statutes, that a married woman is not bound by an executory contract, but while recognizing that rule, we deny its applicability here, for the plain and adequate reason that the dedication here was executed prior to marriage and subsequently confirmed.

A dedication of land need not be evidenced by a written conveyance. A text-writer says: "There is no necessity for a grant or conveyance by deed or writing on the part of the owner of land in order to constitute a dedication." Herman Estop., section 520; Reed Stat. of Frauds, 752. Our cases and our statutes deny the authority of a wife to convey lands except by deed in which her husband joins, and if a deed was essential to constitute a dedication, then the decision upon this point must be for Mrs. Miller; but, as no deed is required, it can not be said that the statute or the decisions close the dispute. It has been decided that a married woman may execute a lease where a writing is not essential to its validity, and the principle upon which these decisions rest is the same as that which governs this case. *Pearcy* v. *Henley*, 82 Ind. 129; *Nash* v. *Berkmeir*, 83 Ind. 536. The principle to be deduced from these decisions is, that where a written instrument is essential to convey an interest in the land of a wife, then,

in order to give it efficacy, both husband and wife must join in executing it. This principle has been applied to dedications in a case much weaker than the present. The case to which we refer is that of *Schenley* v. *Commonwealth,* 36 Pa. St. 29, wherein it was said: "But it is not to be maintained, that a married woman may not dedicate her land for a public highway. Joining with her husband, she may convey, and, therefore, a dedication, which is but a limited conveyance, may be presumed against her and her husband."

A dedication is in many essential respects different from a conveyance, and some of these differences appear in what has been already said, and it remains to notice some of the others. A dedication does not take the fee from the owner, it simply adds an easement, which, in many instances, as in this, becomes, as it is important to keep in mind, an appurtenant to the estate. A dedication by the husband alone bars the inchoate rights of the wife in his lands. *Duncan* v. *City of Terre Haute,* 85 Ind. 104; 2 Dillon Munic. Corp. (3d ed.), section 594. Upon the principle which governs in cases like that cited, it is held that in proceedings to condemn land the rights of the wife are barred although she is not a party to the proceedings. 2 Dillon Munic. Corp., *supra.* These are essential things and they very clearly show that a dedication differs very materially from an ordinary conveyance. But in the present instance it appears that the highway was appurtenant to the land of the owner, and the court can not refuse to take notice of the fact that such appurtenances add to the value of land, and are really for its betterment. It is so obvious that town lots not accessible by streets would be of little value that courts can not refuse to take judicial notice of the fact. Town lots shut off from streets and unprovided with means of ingress and egress would be so inaccessible and so isolated as to be of comparatively little value. Our law gives to a married woman the full benefit of her separate estate "as fully as if she was unmarried." 1 R. S. 1876, p. 550. *Pearcy*

v. *Henley, supra.* If this be true—and that it is, the plain words of the statute, which we have quoted, incontestably prove—then it would seem to follow that executed contracts made for its improvement or betterment are valid. At common law a wife could make even executory contracts concerning the improvement of her separate property enforceable in equity. Kelly Contracts of Married Women, 185, auth. n. 3; 2 Bishop Law of Married Women, sections 201, 202. Our decisions, not, however, without much wavering, are that she can not bind herself by an executory contract, but these decisions do not govern such a case as this, for here the act was fully executed. The question is not what she may agree to do, but whether she may undo what has been fully consummated and upon the faith of which third persons have acquired rights of property. The controlling question is, may she do an act not requiring a written conveyance for the betterment of her separate property? Suppose, for the sake of illustration, that a married woman builds a mill on her own land, and, over other lots owned by her, lays out a highway which affords the means of access to the mill and renders it beneficial to her and gives it value, and that the public improves this strip and she conveys to others lots bounded on the highway, and suppose further, that she afterwards sells the mill, is it not clear that it would be beyond her power to undo what she had done, revoke the dedication, impair the value of the lots sold by her, and destroy the value of the mill property by cutting off all means of access? In such case it is quite clear that the highway would be deemed an appurtenance and would pass with the grant of the mill. We have seen no case that intimates that a married woman who conveys property does not also convey all appurtenances. Where a highway is created as an appurtenance to land, that appurtenance passes with the sale of the land. Washburn Easements, 35; *Ross* v. *Thompson, supra,* and cases cited. That is the case here; the street was made an appurtenance for the

betterment of the lots platted by the duly authorized representatives of Mrs. Miller, acting under the order of the court, and lots were conveyed by deeds, in which her husband united, with reference to this street. The conveyances, as we have already demonstrated, did more than pass a right to the street in front of the lots sold, for they passed a right to the use of the street, as a street, from end to end as designated on the plats by which the lots were bought and sold. All the cases agree, that the sale and conveyance of a lot bounded by a highway conveys the fee to the center of the way, and an interest in the highway, as such, throughout its whole length. When the conveyances were made to the purchasers of lots on Highland street the purchaser of each lot acquired the fee in front of his lot to the center of the street, and his deed also conveyed, as appurtenant to the principal thing granted, a right to enjoy an easement in the street as a street. We are clearly of the opinion that the second conclusion of law was wrong as to all of the appellees.

Much stress is placed upon a statement contained in one of the specifications of the special finding that the street south of Market street was never dedicated to the public. But this is a mere conclusion of law improperly blended with matters of fact, and can not govern the facts. Courts always act upon the facts found and never upon mere conclusions of law wrongly cast into the special finding. *Dixon* v. *Duke,* 85 Ind. 434; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Anderson* v. *Donnell,* 66 Ind. 150.

Judgment reversed, with instructions to restate the second conclusion of law, and to render judgment upon the whole finding in favor of the appellant.

Filed Dec. 30, 1884; petition for a rehearing overruled June 27, 1885.