Filed Jan. 31, 1891.

---◆---

No. 14,698.

THE TOWN OF MARION ET AL. *v.* SKILLMAN ET AL.

DEDICATION.—*Sufficiency of.*—All that is necessary to constitute a dedication of land to a public use is the assent of the owner of the soil to the use by the public, and the actual enjoyment by the public of the use for such a length of time that public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment.

SAME.—*Intent.*—To make a dedication complete, an intent on the part of the owner to dedicate must clearly appear.

The Town of Marion *et al. v.* Skillman *et al.*

SAME;—*Assent of Owner.*—The assent of the owner to the public use need not be expressly declared, nor be manifested in any particular manner, but may be implied from the conduct of the owner of the land.

SAME.—*Implied.*—An implied dedication arises by operation of law from the acts of the owner of the land.

SAME.—*Irrevocable.*—A dedication once made is irrevocable; it is considered as in the nature of an estoppel *in 'pais.*

SAME.— *Use for Twenty Years Without Intent to Dedicate.*—Twenty years' use by the public under a claim of right, evidenced by the use, gives a right to the road or street of which the owner of the fee can not divest the public, whatever his intention may have been, not because an intent to dedicate is conclusively presumed, but because the statute of limitations has divested the owner of a right by destroying the remedy.

SAME.— *Width of Street Dedicated.*—*Example.*—North of a small unplatted tract of land in a town was a platted tract, and south of it a tract similarly platted, both plats within the town limits. A platted street in the north plat extended south to the north line of the unplatted tract; and a similar platted street, of the same width and name, began at the south line of such unplatted tract, in a direct line with the north street, and extended south through the south plat. That portion of the unplatted tract lying between where the street ended on the north and the other commenced on the south was unfenced and unoccupied to the full width of the streets, except a narrow strip on the west side covered by a hotel. Such had been the condition of the three tracts of land for more than twenty years, and the public had used the two streets, and the space across the unplatted tract as a street, for that length of time.

*Held,* that there was a dedication of a strip across the unplatted tract to the full width of the two streets, except that portion occupied by the hotel, and that the three parts constituted one street.

STREET IMPROVEMENT.—*Enjoining.*—Before the courts will, at the suit of an, abutting land-owner, enjoin municipal authorities in making street improvements, at the public expense at least, it must be shown that there has been a clear invasion of the rights of such complaining land-owner.

SAME.—*Irreparable Injury.*—Before an injunction will be granted, in such an instance, it must be shown that unless granted the abutting lot-owner would suffer irreparable injury.

SAME.—*Power to Assess for.*—A city or town can not compel abutting land-owners to pay for street improvements unless empowered so to do by statute; and when so empowered, the statute will be strictly construed.

SAME.—*Improvement at Public Expense.*—The power to make street improvements, to be paid for out of the city or town treasury, is liberally construed; and it is the exercise of a corporate function that is implied from the general words of the act of incorporation.

SAME.—*Repairing.*—Power to assess abutting lot-owners with the cost of grading and paving a street does not, of itself, authorize a city or town to assess such owners with the cost of repairing such street.

SAME.—*Narrowing Improvement of Sidewalk.*—A city or town is not compelled to pave a sidewalk to the full width it has been formerly paved, from that fact alone; but it may narrow such improvement when it repaves it.

SAME.— *Width of Sidewalk.*—Town trustees have the power to determine what the width of a sidewalk shall be; and they are not required to make it of uniform width throughout the entire length of the street, nor to make the improvement of such sidewalk for the entire length of a uniform width.

From the Grant Circuit Court.

*A. T. Wright, A. E. Steele,* and *J. A. Kersey,* for appellants.

McBRIDE, J.—This was a suit for injunction by appellees against appellants. The court found the facts specially and stated its conclusions of law thereon. Appellants excepted, and the only questions necessary to be considered here arise on the assignment of error by appellants that the court erred in its conclusions of law.

The facts found by the court are substantially as follows: Appellees own and are in possession of a tract of land situate within the corporate limits of the town of Marion, containing $\frac{42}{100}$ acres, on which is situate a valuable hotel building. This land they and their vendors and predecessors in ownership had owned and occupied for more than twenty years when this suit was commenced and appellees had resided thereon for more than fifteen years prior thereto. No part of this land had ever been platted as an addition to said town, nor had any part of it ever been condemned, nor formally and by record dedicated as a street or part of said town. It was, however, surrounded by lands that had been thus formally platted in lots, streets and alleys. Lying north of and adjoining the land in question is what is known as "Clark Wilcott's addition" to said town, and south and adjoining the said land is what is known as "Pilcher's addition," and a certain street known as " Branson street " is laid out

and used across both said additions, running north and south forty-nine and one-half feet in width, and a direct extension of said street from one of these additions to the other would pass over and across the east side of appellees' said land. Appellees' and their predecessors in the ownership of said land permitted the public and said town to use a strip of the east side of their said land as a public street and as a continuation of said Branson street from a time prior to the erection of said hotel building and for more than twenty years prior to the commencement of this suit. From the facts found it further appears that Branson street, as dedicated to the public on the plats of Clark Wilcott's addition, Pilcher's addition and the original plat of the town, in connection with the strip used by the public, with appellees' permission, across their said land, formed a continuous and straight strip extending entirely across said town of the uniform width of forty-nine and one-half feet, and that until the erection of the hotel building above referred to, there was no obstruction on appellees' land to the use by said town and the public of said Branson street in its uniform width of forty-nine and one-half feet. When the hotel building was erected is not shown save that it was since the public commenced the use of appellees' land as a part of said street and prior to March, 1887. When the hotel building was erected it was so placed that at its northeast corner it was six inches, and at its southeast corner thirty inches, east of the west line of said Branson street; or, in other words, if Branson street was extended across said land said building would extend into the street to that distance.

· In March, 1887, one of the appellees, with others, petitioned the board of trustees of the town to cause the sidewalks on said Branson street, including the part thereof along and on said land, to be graded to the width of eight feet, and paved within said eight feet to the width of four feet. The board granted the petition, ordered the improvement made, and caused the engineer of the town to set stakes

showing the line of the improvement and marking the outer or curb-line.

The finding is a little obscure as to the location of the curb-line, but as we construe it the curb-line was laid to correspond with the curb-line on other parts of the same side of Branson street.

The walk was then constructed in accordance with the order of the board of trustees, except that appellees, instead of improving the walk in front of their hotel building so as to conform to the boundaries indicated by the engineer, disregarded the curb-line fixed by him, and so constructed the walk that at the northeast corner of the building it extended six inches east and outside of the curb-line, and at the southeast corner it extended thirty inches outside thereof. In other respects, as to grade, width, material, etc., it conformed to the order made and the stakes set by the engineer.

The court finds this was rendered necessary by reason of the location of the hotel building as above stated, and that in order that the walk might be eight feet wide in front of the hotel building, it was necessary either to thus extend the walk outside the curb-line, or move the building back to that distance. This walk, after its completion, was accepted by the town.

In April, 1888, appellees, with others, petitioned the board of trustees of the town to cause Branson street to be graded and macadamized. The prayer of the petition was granted; and the necessary steps were taken by the board to grade and macadamize the street accordingly.

In order to carry out this work according to the plans and specifications adopted by the board, the court finds that " It will be necessary to take up and remove a portion of said sidewalk pavement so made by plaintiffs, to wit, a strip off the east side thereof six inches wide at the north end, and regularly increasing in width to thirty inches wide at the south end thereof."

The town authorities let the contract for the construction

of the street improvement to appellant Philip Matler, and at the time this suit was commenced he was proceeding to construct the same, and was about to take up and remove that portion of appellees' sidewalk above described. If taken up and removed there would remain but five and one-half feet in width of sidewalk in front of the south end of said hotel, and seven and one-half feet at the north end. The object of this suit was to prevent the removal of that portion of the sidewalk, appellees' claim being that by its removal irreparable injury would be done to their said property.

The conclusions of law were in favor of appellees, and it was ordered that a temporary injunction previously granted be made perpetual.

We regret that we are compelled to pass upon the questions presented by this record without the aid of a brief from counsel for appellees.

Their contention, however, as we gather it from the record, seems to be that the town has never acquired the right to treat the strip of land in question as a part of Branson street; or, if their conduct has been such as to amount to a dedication, that the dedication is only of so much of the strip of land as lies outside the line of the hotel building, which line must be treated as the boundary, and the sidewalk and curb-line be adjusted accordingly; and that the threatened cutting away of a portion of the sidewalk, which they aver will render their property worthless, is an attempt on the part of the town to so widen Branson street at that point as to take a part of the land on which the building stands, which has never been dedicated to the public, and thereby deprive them of it without due process of law.

The statement which we have made of the facts as they were found by the court, is, we think, accurate and full as to all facts found which are necessary to a determination of the questions involved.

That property may be dedicated to a public use is a principle too well established to require any citation of authori-

ties. As is also the principle that all that is necessary to constitute such dedication is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment. *State* v. *Hill,* 10 Ind. 219; *Mauck* v. *State,* 66 Ind. 177; *Summers* v. *State,* 51 Ind. 201; *City of Indianapolis* v. *Kingsbury,* 101 Ind. 200. There must be in such cases an intent on the part of the owner to dedicate, and the intent to dedicate must clearly appear. Dillon Munic. Corp., section 627 *et seq.* Such intent may be inferred from circumstances.

The assent of the owner to the use need not be expressly declared, nor be manifested in any particular manner, but may be implied from the conduct of the owner of the land. Elliott Roads and Streets, 99.

An implied dedication arises by operation of law from the acts of the owner. *Williams* v. *Wiley,* 16 Ind. 362; *City of Evansville* v. *Evans,* 37 Ind. 229; *City of Indianapolis* v. *Kingsbury, supra; Waltman* v. *Rund,* 109 Ind. 366.

It is considered as in the nature of an estoppel *in pais,* and once made it is irrevocable. Elliott Roads and Streets, 89 *et seq.;* Dillon Munic. Corp., section 631, and cases cited; *Haynes* v. *Thomas,* 7 Ind. 38.

While the question of dedication from permissive occupation and use depends upon the intention of the owner, yet evidence of such occupation and use is one of the evidences of an intention to dedicate. No length of time can be fixed as necessary to enable a court or jury to find that there has been in fact a complete common law dedication. The question as to the intention of the owner of the land to dedicate it, is, in the majority of cases, one of mingled law and fact, although there may be cases where the facts are undisputed, and where they admit of but one legal interpretation, or can lead to but one conclusion, and in all such cases the ques-

tion is purely one of law.    Elliott Roads and Streets, 120 *et seq. ;  Kennedy* v. *Mayor, etc.,* 65 Md. 514.

When the use of the easement has continued for more than twenty years the rule as stated by some of the authorities is that the intention of the owner to dedicate will be conclusively presumed.    We think, however, that the authors of Roads and Streets, above cited, state the principle more accurately when they say :  " Twenty years' use by the public, under claim of right evidenced by the use, will give a right to the road or street, of which the owner of the fee can not divest the public, no matter what may have been his intention.    *   *   *    This result follows, not because an intention to dedicate is conclusively presumed, but because the statute of limitations has divested the owner of a right by destroying the remedy."    Elliott Roads and Streets, 123.

As to so much of the land in question as is not covered by the hotel, we have no difficulty in holding that the public rights therein are as full and complete as if it had been formally and expressly dedicated by deed or plat.    As to that portion covered by the hotel a different question is presented. Upon the facts found we think the permissive use by the public of the strip of land was evidence of an intention of the owners to dedicate to the public a strip thereof corresponding in width to the strip already existing in connection therewith immediately north and south of it.    The inference of an intention to dedicate would not be simply to dedicate that portion upon which there was actual travel, but would evidence the intention of the owner that Branson street was to be continued across their land.    *Bartlett* v. *Beardmore,* 77 Wis. 356 ;  *Sprague* v. *Waite,* 17 Pick. 309 ;  *Hannum* v. *Belchertown,* 19 Pick. 311 ;  *Simmons* v. *Cornell,* 1 R. I. 519 ;  *Cleveland* v. *Cleveland,* 12 Wend. 172.

If such use continued long enough before the erection of the hotel to make the dedication complete, the fact of the subsequent erection of the hotel would not affect the public right.    A dedication once complete can not be revoked by

the mere act of the owner. *In re Commissioner of Public Parks*, 6 N. Y. Supp. 779; Dillon Munic. Corp., section 631, and cases cited; *Mayor, etc.,* v. *Franklin*, 12 Ga. 239.

In this case, however, there is no finding which shows how long the public use of the land had continued before the erection of the hotel. The finding is that such use commenced before the hotel was built, and had continued more than twenty years when the suit was commenced, but so far as the finding is concerned the hotel may have been erected within a month or a year after the commencement of such use, and we can not say that the public had prior thereto acquired any rights therein.

So far, then, as the facts are found in this case, we can only say that except for the strip actually covered by the hotel, the land in question constitutes a part of Branson street, and that the rights of the public therein are as complete, and the power of the board of trustees over the same as ample, as if there had been an express statutory dedication of it by the owners.

While in this State, by statute (section 3367, R. S. 1881), boards of trustees of incorporated towns are given exclusive power over the streets within the corporate limits of their respective towns, and are invested with large discretionary powers in the exercise of the duties thus imposed, there may arise many cases where it becomes the duty of the courts to interfere by injunction to prevent them exceeding their powers or abusing such discretion.

Judge Dillon says: " Generally speaking, equity will interfere in favor of, or against, municipal corporations, on the same principles by which it is guided in cases between other suitors." Dillon Munic. Corp., section 908.

While this is true, it was well said by the Supreme Court of New Jersey: " The process of injunction has been called the strong arm of the court, and it has been often said that to render its operation useful it must be exercised with great discretion, and only when necessity requires. Nor am I aware

of any class of cases to which it should be applied with greater caution than to the proceedings of municipal corporations in the execution of public improvements." *Cross* v. *Mayor, etc.*, 18 N. J. Eq. 305.

We think it should be shown that there has been a clear invasion of the rights of a party to justify the courts in interfering by injunction with the conduct of municipal authorities in making street improvements of the character here in question.

The acts complained of are, that in the grading and macadamizing of the street they are proposing to cut away a portion of a sidewalk heretofore constructed by their order. In addition to the general statute heretofore referred to, which gives to boards of trustees of incorporated towns exclusive power over streets, etc., within the corporate limits of their respective towns, certain special powers are given them in relation to the grading and paving of sidewalks, and the grading, paving, gravelling and macadamizing of streets. Section 3357, R. S. 1881, provides that " Whenever in the opinion of the board of trustees of any incorporated town in this State, public convenience requires that the sidewalks of any street in such town should be graded or paved or planked, such board of trustees may, by an ordinance, compel the owners of lots adjoining such street to grade, pave, or plank the same." The three sections next succeeding prescribe the manner of doing this.

Section 3363 provides that in certain cases, upon petition of two-thirds of the resident owners of certain real estate, such board of trustees shall make certain improvements or repairs in streets and sidewalks.

Section 3364 provides that in certain cases, upon petition of a majority of the resident owners of certain lots or lands, such board of trustees may cause the grading, paving, gravelling or macadamizing of streets or parts of streets.

These statutes commit to the boards of trustees a wide discretion as to the making of such improvements. In so

far as they empower the board to compel the abutters to do the work or pay for the same, under familiar and well settled principles they will be strictly construed, and they can exercise no powers except such as the statute expressly confers. For example, if the statute authorizes them to compel the adjacent lot-owner to grade and pave or plank a walk, but does not authorize them to thereafter compel him to repair or keep it in repair, the power as against the lot-owner is exhausted when they have compelled him to grade and pave or plank, and it will thereafter be the duty of the town to keep it in repair.

As is well said in the work on Roads and Streets from which we have heretofore quoted : "The right to levy a special assessment is purely statutory and in derogation of common right, whereas, making public improvements demanded by the public good, and to be paid for out of the public treasury, is the exercise of a corporate function that may well be implied from the general words of the act of incorporation." Elliott Roads and Streets, 343.

Under the statute above referred to, with reference to sidewalks, nothing is a necessary preliminary to action by the board but their opinion that public convenience requires it. They are unrestricted in determining the grade, the material of which it shall be constructed, or its width. While a petition is necessary to authorize them to grade and pave, or gravel or macadamize a street, so as to charge the cost of the improvement on the abutter, the board is unrestricted in determining the grade, the width to which it shall be improved, and in otherwise adopting specifications for the work.

In this case the board had determined that public convenience required the grading and paving of the walk. They had required that it be graded to the width of eight feet, and that four feet of the walk thus graded should be paved. If they had decided that public convenience only required the grading of four feet instead of eight, there would have been

no ground for interference by the courts. That was a matter which the Legislature has left solely to their discretion, and we think that when they have once decided that public convenience requires the grading and paving of eight feet, and it has been done accordingly, they are not thereby precluded from afterwards deciding that the walk is wider than the public needs require, and causing it to be narrowed to meet their changed views.

In the case at bar the sidewalk had been graded to the width of eight feet in obedience to the order of the board, and four feet of the graded space had been paved. What part of the graded space was covered by the paving does not appear from the finding. Whether in the outer, the inner, or the central part, the court does not say; it is, however, not material. The land in question formed a part of Branson street, and the board of trustees had the same power to determine the width of the sidewalk at that point that they had to determine the width of any other sidewalk on any other street, and in the absence of any finding showing such abuse of the discretion with which the law has clothed them as would work great and irreparable injury to the appellees, they should not have been enjoined. If the effect of the work would be to cut off or destroy appellees' right of ingress or egress, they would doubtless be entitled to enjoin the board from doing it, but no such case is presented.

The record presents another question which is, we think, fatal to appellees' contention. To entitle them to an injunction it was necessary for them to plead and prove facts showing that the injunction was necessary to prevent the infliction of great and irreparable injury. The complaint does contain averments which, we think, are probably sufficient, but no fact is found by the court covering this averment. The court simply finds that the construction of the work as proposed would involve the taking up and removal of a strip of the sidewalk " six inches wide at the north end, and regularly increasing in width to thirty inches wide at the

south end thereof, and that to take up and remove the part of said walk, as proposed, will leave but five and one-half feet of walk in front of the south end of said hotel for a sidewalk, and seven and one-half feet at the north end." What effect, if any, this will have upon the hotel is not shown. The walk remaining may be of ample width. The finding indicates nothing to the contrary. Only four feet in width of the walk was paved. The remaining portion was probably left to be sodded for ornament. It may be that the paved portion will all remain and only the æsthetic sense be offended by the removal of a portion of the ornamental part of the walk. Access to the premises may be rendered easier instead of more difficult. Upon the facts found it certainly can not be stated as a legal proposition that the walk thus left will not be sufficient, or that the proposed action of the board will work irreparable injury to appellees. The facts found were insufficient to entitle appellees to relief by injunction.

Judgment reversed, with instructions to the court below to restate its conclusions of law in accordance with this opinion and to render judgment accordingly.

