Filed April 25, 1895.

---

No. 1,424.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY
COMPANY *v.* MILLER.

HIGHWAY.—*Used Territory, at Railroad Crossing, Including More than Actual Boundaries.—Rights of Traveling Public.—Irrelevant Instruction.—Misleading Jury.*—In an action by the father for the death of his son on a railroad track at a place where it crossed a highway, the court instructed the jury that "a public street * * is a public highway, and such street is not necessarily confined to the boundaries of the same as originally laid out and shown by the plat; but if for more than twenty years the boundaries of the street have been occupied, used and recognized by the public as including more territory than the actual boundaries, then the persons traveling upon or along such street are authorized to regard the whole of such territory as the street."

*Held*, that owing to the unsatisfactory character of the evidence in relation to the use and occupancy by the public of the place where the accident occurred, as a part of the street, the instruction in question was not pertinent and applicable to the evidence, and was calculated to mislead the jury.

SAME.—*Street.—Railroad Right of Way.*—The use of a railroad right of way without the consent of the railroad company, unless founded on some claim of right, is not sufficient to authorize the traveling

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

public to regard that part of the track as a part of the street or highway.

SAME.—*Railroad Right of Way.*—*Street, Actual Use Beyond Boundaries as Platted.*—*Rights of Traveling Public.*—If a part of a railroad right of way was occupied and recognized as a part of a street before the construction of the railroad, and such use, occupancy and recognition afterwards continued, then, as between the railroad company and the public, it would perhaps be proper to say to the jury that the rights of persons upon the street, as such, would be determined by the question as to what was in fact the street, and not what was included in the plat.

From the Floyd Circuit Court.

*E. C. Field, W. S. Kinnan* and *W. C. Utz,* for appellant.
*C. L. Jewett* and *H. E. Jewett,* for appellee.

DAVIS, J.—This action was brought by appellee to recover damages for the death of his eighteen year old son, who was run against and killed in the city of New Albany, July 4, 1892, by appellant's train of cars.

It is alleged in the complaint that his son was lawfully passing, on foot, along Charles street, in the city of New Albany, at a point where said railway was constructed upon said street, and near the intersection of Locust and Charles streets, and that while so lawfully passing along said street and upon the track of the defendant's railway, laid and constructed therein, the defendant negligently ran a certain passenger train, consisting of a locomotive, baggage and passenger cars, along its said track over and along said Charles street and across Locust street aforesaid.

The specific negligence charged against appellant is:

1st. A high and dangerous rate of speed, in violation of the rate fixed by the city ordinance.

2d. Failure to ring the bell or give other signal of warning.

On trial by jury, appellee recovered a verdict and judgment for $1,500.

The Louisville, New Albany and Chicago Railway Company *v.* Miller.

One of the errors assigned is that the court erred in overruling appellant's motion for a new trial.

A plat of the vicinity of the accident, of which the following is a substantial copy, was introduced in evidence by appellant.

Appellant's theory was that said decedent was killed on its track on lot 49. Appellee's theory was that he

was killed on the street. It appears that Charles Miller, the decedent, approached appellant's railroad from the west and along the alley at the southwest corner of lot 49 and then entered upon the track and walked along the railroad from the south end of lot 49 and northerly along the track to the point where he was struck by the engine. According to a survey and measurement, the distance from where the railroad enters lot 49 at the alley to the point where it leaves the lot is 96.8 feet. The jury, in answer to interrogatory, find that said Charles Miller had gone northeast sixty feet, when he was struck and run over by the engine. The part of Charles street indicated on the plat was not, as we understand from reading the record, improved. Several of the witnesses testify that the point where the decedent was killed was within the street, as indicated by the fences. In this connection we quote from the brief of counsel for appellee as follows: "It may be that Charles street, at the point where the decedent was killed, as fenced off, laid out, and used, encroached some three feet upon lot 49. But since from time immemorial it had been so used and occupied, and the fence and side of the street recognized as the street line, the rights of persons upon the street as such are to be determined by the question as to what was in fact the street and not what was included in certain imaginary and arbitrary boundaries." The street next south of the alley was Beeler street. Charles street appears to be a continuation of Fifteenth street. On the trial appellee asked witnesses questions tending to elicit proof that the right of way of appellant from Beeler street to Locust street had been used continuously by the public for a great deal of travel, but objections of appellant were sustained to the questions.

The existence of the fence, foot passengers going fre-

quently along the railroad track, and the statement of several witnesses that the decedent was in the street when he was killed, are, so far as we have observed in reading the evidence, the only facts tending to prove a public use of the railroad as a street at the point of the accident. It appears that the railroad at this point has been operated continuously for twenty-four years without any change of location, so far as the main track is concerned. We fail to find any evidence in the record tending to prove that the ground occupied by the railroad at this point was a part of the street prior to the construction of the railroad. In fact, as we read the evidence, instead of showing a public use of this property at the place where the decedent was struck, as a street, the facts and circumstances disclosed by the evidence indicate the impracticability of such use by the public generally. The evidence shows that the railroad company, when it built its track at this point, made a cut of at least three feet, the slope beginning at the fence line on the west side and extending down to the railroad bed, and was of such a character that even foot passengers could not walk along the side of the railroad between it and the fence, and that on the other side was the switch or side track.

The jury, however, not only heard the evidence in relation to the situation, but also, under the instructions of the court, visited and inspected the premises, and we would not feel justified in disturbing the verdict on the evidence. The court, at appellee's request, gave the following instruction:

"A public street of the city of New Albany is a public highway, and such street is not necessarily confined to the boundaries of the same as originally laid out and shown by the plat. If for more than twenty years the boundaries of the street have been occupied, used, and

recognized by the public as including more territory than the actual boundaries, then the persons traveling upon or along such street are authorized to regard the whole of such territory as the street. So, in this case, if you find that for a long period—twenty years—the fences were so constructed that Charles street was in fact used and occupied by the public to a greater width than it is shown upon the plat, then the plaintiff's son, in the use of said street on the day of his death, was authorized to regard all the territory which had been so used and occupied as a street as part thereof.''

Several objections are urged to this instruction. It is conceded that the boundaries of a street, as originally laid out and platted, are not necessarily limited thereby for all time. It is contended, however, that if use and occupancy by the public are relied upon for such change, the use must be with the consent of the owner of the property so used. *City of Indianapolis* v. *Kingsbury,* 101 Ind. 200; see also *Jeffersonville, etc., R. R. Co.* v. *Goldsmith,* 47 Ind. 43.

Counsel for appellee insist that the position of appellant is not tenable in this case because, among other reasons, the appellant having built its railroad on the street as used and occupied by the public prior thereto, the relative rights of the railway company and the deceased, and their obligations to each other as to the street under such circumstances, are fully and correctly set forth in the instruction. If the evidence was clear and undisputed that the ground at this point was used and occupied by the public prior to the building of the railroad, or if the instruction proceeded on the theory that if the jury believed from the evidence that the public used and occupied the premises at this point as a street before the railroad was constructed thereon, there would be much force in the argument of counsel.

In other words, if the instruction proceeded upon the theory that this part of lot forty-nine was used, occupied and recognized as a part of the street before the construction of the railroad, and that such use, occupancy, and recognition afterwards continued, then, as between appellant and the public, it would perhaps have been proper to have said to the jury that the rights of persons upon the street as such should be determined by the question as to what was in fact the street, and not what was included in the plat.

In the light of the indefinite and unsatisfactory character of the evidence, the effect of the instruction was to say to the jury that if appellant, twenty-four years before the trial, built its railroad at this point on lot 49, outside of the limits of the street, as it was then recognized, the use and occupancy thereof afterwards as a street by the public for twenty years, were sufficient to make it a part of the street. Such continuous use and occupation, beginning after the railroad was built, were sufficient, if under some claim of right by the public or with the consent of appellant. The assent of appellant to such use, or standing by and seeing its right of way used by the public as a street might, under some circumstances, be sufficient evidence of a dedication; but such use of appellant's right of way without the consent of appellant, unless founded on some claim of right, was not sufficient to authorize the decedent to regard that part of the track on lot 49 as a part of the street.

In this case the decedent was not, while traveling along the street, attempting to cross the railroad track. On the contrary, he was walking on and along the track. He entered upon the track at a point 60 feet southwest of the point where he was struck, and was walking with his back towards the approaching train.

The unsatisfactory character of the evidence in rela-

tion to the use and occupation by the public of the place where the accident occurred as a part of the street, when considered in connection with the ruling by the trial court in excluding the evidence tending to prove that the right of way of appellant from Beeler street to Locust street had been used continuously by the public for a great deal of travel, lead us to the conclusion that the instruction in question was not pertinent and applicable to the evidence, and that it was calculated to mislead the jury.

Whether the excluded evidence was admissible, we need not determine, but if such use existed before the railroad was built, and if it continued afterwards under some claim of right or with the consent of the appellant, no reason occurs to us why it should not have been admitted as evidence at least of dedication.

Judgment reversed, with instruction to sustain appellant's motion for a new trial.

Ross, J., concurs in result.

