Campbell *et al.*, Executors, *v.* O'Brien.

No. 8095.

CAMPBELL ET AL., EXECUTORS, *v.* O'BRIEN.

TRESPASS.—*Highway.—Locus in Quo.—Dedication to Public Uses.—Railroad Company.—Assent of Owner.—Street of City.—Grade of Railroad.—Erection of Bridge.—Evidence.*—In an action against a township trustee for trespass, in entering plaintiff's close and cutting down fence-posts thereon, a dedication of the *locus in quo* to public uses was proved by evidence showing that a railroad company, to secure a lower grade for its road across a street forming the north boundary of a city, was to furnish a strip of plaintiff's ground for a street-crossing further north, at surface grade, and entered into negotiations with plaintiff, and agreed, not in writing, upon a price; that the company took possession of the old street-crossing, and its engineer, assisted by plaintiff, surveyed the line of the new road; that a new bridge was necessitated by the change of highway, and was constructed; and that plaintiff resided in immediate proximity to the premises occupied, and had knowledge of the use of his land for the highway as changed from the time it commenced, although plaintiff never received payment for his land from the company or the county. WOODS, J., dissents.

HIGHWAY.—*Dedication.—Right of Public.—Assent of Owner to Use of Land.—Public Accommodation and Private Rights.*—The right of the public to a highway does not rest upon a grant by deed, nor upon a twenty years' possession, but upon the use of the land, with the assent of the owner, for such length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.

SAME.—*Estoppel.— Vendor's Claim Against Public.*—After public rights have intervened, the owner of land used as a highway with his assent is estopped thereby, and can not enforce a vendor's claim against the public.

From the Porter Circuit Court.

*T. J. Merrifield*, for appellants.

*A. L. Jones*, for appellee.

NEWCOMB, C.—This action was brought by Thomas E. A. Campbell, to recover damages for entering his close and cutting down certain fence-posts thereon. The cause was submitted to the court, and the evidence heard at the December term, 1877, and was taken under advisement. Before judgment the plaintiff died, and the appellants, his executors, appeared and were substituted as plaintiffs. The parties then agreed that the cause should be decided by the court

on the evidence submitted at the former term. A finding was then entered for the defendant, and judgment was rendered accordingly, over a motion of the appellants for a new trial. The only error assigned is the overruling of that motion.

The facts, as shown by the record, are substantially as follows: In the autumn of 1873 the Peninsular Railroad Company, the name of which corporation appears to have been afterward changed to that of the Chicago and Lake Huron Railroad Company, was engaged in grading its road through the city of Valparaiso, and sought permission to cross Third street, the northern boundary of the city, at a level five feet below the then grade of said street. Conferences were held between the officers of the railroad company, the mayor and a committee of the common council of the city, the county commissioners and the township trustee, which resulted in an agreement that the railroad company should be permitted to so sink the grade at Third street, provided they furnished the ground for a change of the street to a point slightly further north, where it could cross the railroad at the surface grade. The land necessary to be occupied by the proposed change of route belonged to the plaintiff. The railroad company, by its agents, McClelland and Starr, entered into negotiations with the plaintiff for the purchase of the necessary strip of ground to make the change. A price was agreed upon, and, soon after, the railroad company removed the plaintiff's fence, obstructed the travel at the Third street crossing, and turned it over the plaintiff's land so agreed to be purchased. The line of the new road was surveyed by the engineer of the railroad company, the plaintiff being present and assisting in the survey. The change in the course of the highway necessitated the construction of a new bridge, to conform to it, over the Pittsburgh, Fort Wayne and Chicago Railroad, which, at that point, ran in close proximity to the Chicago and Lake

Huron Railroad. The plaintiff never received payment for his land, but it does not appear that the public authorities, interested in the change of the highway, had any notice of that fact until several months after the road was so changed, and the new bridge was erected, and the old highway so destroyed by the railroad as to render it impracticable to resume its use as a highway.

The plaintiff resided in immediate proximity to the premises so occupied, and had knowledge of the use of his land for the highway as changed, from the time its use as such by the public commenced. There was no written contract executed by the plaintiff for the sale of this land, but at the May term, 1874, of the Porter Circuit Court, he sued McClelland and Starr for its price, after having tendered them a deed to the railroad company. On the trial of that action the plaintiff suffered a nonsuit, and afterward petitioned the board of county commissioners to make him compensation for the land so taken. This petition was, however, abandoned, and, as the next means of procuring payment, the plaintiff and divers other parties presented a petition for a change in the highway, so as to locate it, by an order of the board of commissioners, on the line which had been previously occupied as above stated, over plaintiff's land. Viewers were appointed, who reported that on examination they found a good and sufficient travelled road already in existence on the route proposed in the petition, and recommended that the prayer of the petition be not granted. This appears to have ended that proceeding. Afterward, on December 10th, 1875, the plaintiff notified the township trustee, in writing, to remove the obstructions in the former road, as he would enclose his land over which the public passed, on the 13th day of that month. He so far proceeded to so enclose his premises as to plant fence-posts across the road as used. These were removed by the defendant, who was the township trustee, which was the trespass complained of.

When the plaintiff agreed to sell the strip of ground in controversy to the railroad company, he knew that the purpose and object of the purchase was to appropriate it as a highway, and knew of the immediate obstruction of the old road, the change of the course of travel occasioned thereby, and of the subsequent erection of the new bridge, as a consequence of such change. The only question in the case is, did the acts and acquiescence of the plaintiff amount to a dedication of the *locus in quo* to the public, for use as a highway? That there was such dedication we entertain no doubt. True, the owner did not directly dedicate, but he stood by and permitted the railroad company to do so, and this was equivalent to a dedication by himself. He expected to be paid by the railroad company for the land, but the failure of the latter to compensate him could not change the rights of the public, which had been previously granted with his knowledge and consent, and which could not be resumed by him without serious public inconvenience and loss. In 2 Greenleaf Evidence, sec. 662, it is said of a dedication of land for a highway: "The right of the public does not rest upon a grant by deed, nor under a twenty years' possession; but upon the use of the land, with the assent of the owner, for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." This doctrine was expressly approved by this court in *The State* v. *Hill*, 10 Ind. 219, and *Hays* v. *The State*, 8 Ind. 425. See, also, *The City of Columbus* v. *Dahn*, 36 Ind. 330.

It is urged by appellants that the public had no right to assume a dedication by Campbell of the premises in controversy, because it was known to the proper public officers that he did not intend to make a dedication, but that he agreed to sell to the railroad company, and that, as a vendor, he had a right to resume possession in case the purchase-money was not paid.

While it is true that Campbell contemplated a sale, so far as he was concerned, he knew that the railroad company intended to dedicate the land to public use as a highway, and this he permitted the corporation to do without objection, and without notice of the non-payment of the purchase-money, until after the consideration for the change of route had been received by the railroad company, the old route essentially destroyed, and the new road and the new bridge had, for a considerable period, been used by the public.

He assented to the dedication of the land in controversy to the public by the railroad company, the latter assuming to hold by purchase from him, and he was estopped by such assent, after public rights had intervened. 2 Greenleaf Evidence, sec. 663. Under these circumstances, he could not enforce a vendor's claim against the public.

The judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and it is hereby, in all things affirmed, at the costs of appellants.

WOODS, J., dissents, and files opinion.

## DISSENTING OPINION.

WOODS, J.—It is clear on the facts stated in the principal opinion, that the testator, Campbell, had not himself intended to dedicate the *locus in quo* to public use, and that he did not authorize the railroad company, as his agent and for him, to make the dedication. He simply made an oral bargain to sell the land to the railroad company, and, in the expectation that the bargain would be consummated, made no objection to the removing of his fences and to the use of the ground for the purposes of public passage and travel. But the bargain was not consummated, nor put into such shape as to be binding on him or on the railroad company. It was not put in writing, nor so far executed as to take it out of the statute of frauds. It is claimed that the railroad

company, with Campbell's consent, made the dedication; but the railroad company had not acquired the power, of its own will and in its own right, to make a dedication, and of this the world was bound to take notice, so long as the title remained in the testator. The railroad company did not profess to act upon Campbell's authority, but in its own right, which, as was well understood, depended on the completion of the contract of purchase. It was a part of the negotiation between the company and the public officials, that the company should procure the right to turn the street upon the testator's land, and it may be said that the company acted as the agent of the officials, with as much propriety as that it acted for deceased. The deceased was not estopped to deny the right of the company to make the dedication. The public made no expenditure upon the disputed land, in opening the new passage way. It did not vacate the street as it had been, and if it permitted the railroad to obstruct the street, and build a bridge on the proposed new way, but not on the testator's land, it is no ground for an estoppel, though it appear that he stood by and saw these things done without objecting. He had no right to object; and if the public saw fit to make expenditures, and to permit the street to be occupied, on the faith of the alleged dedication, made, as it was, by the company before it obtained either a legal or equitable title, the testator could not be estopped to dispute the validity of the dedication because he did not object to the temporary public use of his land, he having done this in the expectation that the company would complete its purchase, and pay the price, and not through an intention to dedicate, which means to give. The intent to dedicate is an essential element of the transaction.

Campbell and the public both acted on the faith they had in the conduct of the railroad company. The railroad company did not keep faith with either; but does it follow that Campbell alone should suffer? On the contrary, having re-

tained his title, he was in the stronger position, and his right should prevail. It is true that a deed is not necessary to the making of a dedication, but it was necessary to the railroad company's right to make it in this case, and of this, under the circumstances, the public was bound to take notice, if it did not have actual notice, as it probably had. The burden of proving an estoppel was on the appellee, and this includes the proof of the want of notice. It is not pretended that Campbell's various efforts to get pay for his land materially affected the question. They tend to show that he never intended a dedication.