## McCLASKEY v. McDANIEL ET AL.

[No. 5,376. Filed June 22, 1905. Rehearing denied November 1, 1905. Transfer denied January 3, 1906.]

1. JUDGMENT.—*Res Judicata.*—*Highways.*—*Petition to Establish by User.*—The denial by the board of commissioners of defendants' right to have a certain way established as a highway by user is not *res judicata* as to defendants' right to use such way nor as to plaintiff's right to close such way. p. 70.

2. HIGHWAYS.—*Twenty Years' User.*—*Consent.*—*Statutes.*—In an action involving the question whether a certain way is a public highway, the fact of its public use for twenty years is, as to such action, conclusive of its being a public highway, whether used with or without the consent of adjoining landowners. p. 70.

3. HIGHWAYS. — Use. — Equitable Estoppel. — Where adjacent owners laid out a lane on the line between them, connecting with the public highway, and kept it open and improved, erected fences on the sides, allowed its use by the public, knew that neighbors were erecting valuable buildings in such manner as to rely upon an outlet thereby, and intending purchasers, after being told by such neighbors that it was public and after observance of all the conditions, in good faith purchased lands relying upon such appearances and representations, such adjacent owners are equitably estopped from preventing the use of such way by such purchasers. p. 70.

4. SAME.—Dedication.—Intention.—Inferences from Conduct.— The intent necessary to dedicate lands to public use for highway purposes may be inferred from conduct. p. 71.

5. SAME. — Dedication. — Acceptance. — Work by Public. — Acceptance of a highway dedicated to the public may be shown by public use, without any public work on such way, and no specific length of time is necessary to a valid dedication, assent by the landowner, and public use so long that a denial of the right to such use would discommode the public, being all that is necessary to be shown. p. 71.

From Montgomery Circuit Court; Jere West, Judge.

Suit by Ebenezer P. McClaskey against Joseph R. McDaniel and another. From a decree for defendants, plaintiff appeals. Affirmed.

E. C. Snyder and Crane & McCabe, for appellant.
Clodfelter & Fine, for appellees.

BLACK, J.—The appellant sued the appellees, Joseph R. McDaniel and Ida M. McDaniel, to quiet appellant's title to certain real estate. The facts were stated by the court in a lengthy special finding. In 1831 James McClaskey, appellant's father, became the owner and occupant of the west half of the northeast quarter of a certain section of land, numbered twenty, being the land described in the complaint; and about the same time Harrison McDaniel became the owner and occupant of the east half of the same quarter section, and William Cox became the owner and occupant of the southeast quarter of the same section, and Benjamin Peebles became the owner and occupant of the

northeast quarter of section twenty-nine, lying immediately south of the land of William Cox. McClaskey erected his residence near the east line of his land; McDaniel erected his residence in section twenty-one, immediately east of his land above mentioned; Cox erected his residence sixty rods south of the north line and twenty rods west of the east line of the west half of the southeast quarter of said section twenty; and Peebles erected his residence about eighty rods south of the north line and twenty rods west of the east line of the west half of the northeast quarter of said section twenty-nine. About that time there was established and laid out a public highway east and west through the middle of said section twenty-nine, known as the "Overcoat road," extending east through the middle of sections twenty-eight and twenty-seven, and extending west and connecting with other public highways so as to make a direct route to the town of Crawfordsville. About the same time there was established and laid out a public highway known as the "State road," extending from the public highway above mentioned, at the center of said section twenty-eight, whence it ran northwestward through that section and section twenty-one and the east half of the northeast quarter of section twenty (the land of McDaniel, above mentioned), and continuing to a highway which ran to the town of Darlington. The "Overcoat road" has continued to exist, and is now a graveled pike; and the "State road" has continued to run as above stated, except that about fifteen years before the trial of this cause it was deflected so as to run along the north line of section twenty, and from a point on the line dividing the lands of McClaskey and McDaniel it runs north to Darlington, and is now a graveled pike. About the year 1850 these people commenced to fence their lands, and thereby to cut off the byways and wagon ways by which they had been accustomed to cross each other's land to reach the public highways. Before that time McClaskey had a

fence on the east and south lines of his land from a point east of his residence to the south line of his land, and thence westward between his land and the land of Cox. In 1850 it was agreed by McClaskey and McDaniel that in fencing their respective tracts there should be a lane left for the convenience of McClaskey in the handling of his stock, and in going to and from his residence, and in the farming of his land, in pursuance whereof McDaniel, in fencing off the southern portion of his land, placed his fence about ten or twelve feet east of the line dividing his land from that of McClaskey, and soon thereafter McClaskey moved his fence above mentioned eight or ten feet west of said line, and McClaskey cut out the timber and cleared up the way sixty rods in length. For five years thereafter McClaskey in going to Crawfordsville would pass south through this way to the land of Cox, across which he would pass diagonally upon a wagon road which McClaskey and Cox had for some years used to reach the "Overcoat road." About this time Cox commenced to fence his land, and extended a fence north from his residence on a line with the fence on the west side of the lane above mentioned (designated herein as the "McClaskey lane"), joining his fence with that of McClaskey, and Cox cleared a roadway from his home up to said lane, and used the lane thereafter whenever he desired in passing to the public highway. At this time, and for some years before, there was a wagon road south from the residence of Cox across his land and the land of Peebles to the "Overcoat road." This wagon way was open through the land of Cox, but on the land of Peebles there were a number of gates across the way. From time to time McClaskey and McDaniel, in fencing the remainder of their lands, extended said lane northward, until at the end of about fifteen years the lane extended to the north lines of their lands, where it opened upon an east and west public highway, and McClaskey, from time to time, cleared and re-

moved the timber from the lane, so that about the year 1865 there was a continuous lane, open.and unobstructed, about twenty feet wide along the line dividing the lands of Mc-Claskey and McDaniel; and in the meantime Cox had constructed a lane, of the width of the McClaskey lane, from a point east of the residence of Cox, northward on the lines dividing the east and west halves of the southeast quarter of section twenty, to the McClaskey lane, so that there was a continuous lane to the public highway running to Darlington and a way with gates thereon southward to the "Overcoat road;" and Cox and his grantees have used the lane for egress and ingress, to the present time, except during a period in the years 1884 and 1885, when it was obstructed temporarily by timber thrown down by a tornado, which timber was cleared away by James McClaskey. About twenty years before the trial Cox erected a residence for his son about thirty rods south of the old Cox residence and fifteen rods east of the line dividing the east and west halves of the southeast quarter of section twenty. Soon afterward the Cox land was subdivided and sold to different persons, and about fifteen years before the trial a house was built at the northwest corner of the east half of the southeast quarter of section twenty, by the person then owning the land on which it was built (now owned by the appellee Ida M. McDaniel). The houses so built by Cox have been occupied continuously, except that the one built for his son was destroyed by fire about two years before the trial. All these houses and their outbuildings were built and arranged so as to face the lane and way in front thereof, and so as to use it as a means of ingress and egress in going to and from Crawfordsville and Darlington. About nine or ten years before the trial the persons owning the lands south from the north line of the southeast quarter of section twenty, on the line dividing the east and west halves of that quarter section and the east and west halves of the northeast

quarter of section twenty-nine, agreed to make an open road from said north line to the south line of the northeast quarter of section twenty-nine, where said road would open upon the "Overcoat road;" and they accordingly did open such road thirty feet wide, and built substantial fences on each side thereof, and made a good roadway, and expended a great deal of time and money in improving it, and they have improved and arranged all their farms and buildings and lots with reference to it. The appellant knew of this improvement, and that it was going on, and that the persons who before that time had used said way from the "Overcoat road" north had also used and traveled over said lane on his premises, and that they used the lane as a means of passing from said way to the public highway and as part of a passageway from the "Overcoat road" to the Darlington road. Except in the years 1884 and 1885, when the way was so temporarily obstructed, said way and lane from the "Overcoat road" to the "Darlington road" has been so used continuously by all persons residing along the same, and by all persons who desired to visit said premises or persons living thereon, and to some extent by the traveling public in passing between the "Overcoat road" and the "Darlington road." At first, said lane and way was seldom used except by those who resided upon premises adjacent thereto, and by those desiring to visit them, but as the region became more populous the road was more frequently used by others than those living along it; and within the last eight or ten years before the trial, and especially since said open roadway was made from the north line of the southeast quarter of section twenty to the "Overcoat road," the way has been quite frequently used by the traveling public. For thirty years before the trial there has been a well-worn and beaten wagon track, plainly distinguishable, from the north end of the McClaskey lane to the "Overcoat road," and said track was worn and made by persons traveling over the land and·

McClaskey *v.* McDaniel—37 Ind. App. 59.

way as aforesaid. James McClaskey and his grantees have always kept the lane open solely for their own accommodation in the use of their land and in passing to and from the house thereon. Cox opened his lane and joined his fences as aforesaid with the knowledge and consent of McClaskey and Harrison McDaniel; and Cox immediately commenced to use the lane with the knowledge of McClaskey and McDaniel, but without asking or receiving their consent, but no objection was made to such use. It was stated in the finding that there never had been a claim of right on the part of any one to use the lane, but the use has been without objection on the part of any one, and without the asking or obtaining of the right or consent of any one; but James McClaskey and the appellant have permitted the use of the lane by any person who saw fit to use it, without objection, and it has been used by any person who saw fit to use it, because there was no objection, and because it was open and unobstructed, and was a convenient way to pass back and forth between the "Overcoat road" and the "Darlington road," and other highways, except that it has been used by persons living along the way as a means of ingress and egress, and has always been used by persons desiring to visit the premises along the way. James P. McClaskey and the appellant, it was found, never intended to dedicate the land to public use or to give any one the right to use it, but simply intended to permit its use by whoever saw fit to do so, so long as it did not interfere with the owner's rights, and the McClaskeys, until the controversy out of which this case arose, did not know that any person claimed to have a right to pass over the lane, if objection were made, except such notice as would result from certain proceedings before the board of commissioners of the county hereinafter mentioned. The McClaskey lane had never been worked by the public, and all the work thereon was done by the McClaskeys or by persons who first asked and obtained their

consent, and the work done on the lane would not average more than $5 in five years, a considerable part of it being done by the McClaskeys. About the year 1893 Joseph R. McDaniel, appellee, being desirous of purchasing real estate, went from Darlington through the McClaskey lane in a buggy to the residence of William Cox, the way thus far being unobstructed, but between said residence and the "Overcoat road" it was obstructed by gates, at different points. He observed the traveled and worn track and the improvements and fences, and observed how the houses faced along the road and were arranged with reference thereto, and he inquired and was informed by the persons then owning the southeast quarter of section twenty that the lane and roadway could not be closed or obstructed except as he then found it, and that the persons living along the way had the right to use it, and that the lane and way had been so used for some twenty-five or thirty years. Mc-Claskey did not know of these representations to McDaniel, who did not inquire of McClaskey concerning the lane, and McClaskey never made any representations concerning it, and did not know that McDaniel was thinking of purchasing real estate there. McDaniel, from what he saw and what he was told, believed in good faith that the lane and roadway could not be closed, obstructed or changed, and that persons residing along the same had a right to travel over the lane; and he relied upon the appearances and what was told him in good faith, and acted upon the same. He was representing his wife, Ida M. McDaniel, appellee, as her agent, and he informed her of the conditions as he understood them, as to the lane and roadway, and what he was told and saw, and she did not know anything concerning the matter but what he told her. A few days afterward the appellees, in going to look at the land, went from the south, from the "Overcoat road" to the home

of Cox, and thence to the house at the northwest corner of the east half of the southeast quarter of section twenty, both of them observing the conditions of the lane and the worn track and improvements; and they both believed that the lane and way could not be closed up or obstructed; and, relying on said representations and appearances, appellee Ida McDaniel purchased of the owner thereof the northeast quarter of the southeast quarter of said section twenty, paying therefor $1,500, believing in good faith that the lane could not be closed or obstructed, and that she had a right to use it. If the lane can be closed, the real estate so purchased by her will be worth from $10 to $15 less per acre than if it remain open. When she purchased there were a house and a barn on the land, near the south end of the McClaskey lane, said buildings facing the lane and way, with gates opening thereon, indicating that persons going to and from the premises would pass from and to the lane and way, and use the same for ingress and egress. This land also extended eastward to the "State road," where there was a gate, to which a wagon road extended from the buildings on the land, of which fact she had knowledge. She immediately took possession of the premises, with her family, and has continued to live there since that time, and in going to and from the premises she and her family have used the way and lane, and also the wagon road crossing the land to the eastern highway. In 1898 the appellees purchased of the owner thereof the north half of the northwest quarter of the southeast quarter of said section twenty, on the west side of said way, and immediately across the same from their residence, paying therefor $650, and have since held possession thereof.

Since the purchase of said land in 1893 the appellees have put thereon valuable and lasting improvements, described in the findings. In 1899 the appellees filed a petition before the board of commissioners of the county, and

caused notice thereof to be served on the appellant, to have the McClaskey lane declared a public highway, on the ground that it had been used as such for more than twenty years, continuously, and asked to have it recorded as a public highway, and the board of commissioners heard the matter and entered an order refusing to grant the petition, from which there has been no appeal. The McClaskey land since 1878 has been owned and occupied by the appellant, in part as heir, and in part as purchaser from other heirs, having knowledge at the time he became such owner of all the facts herein stated that had occurred before that time.

A few days before the commencement of this action the appellant made arrangements for constructing a wire fence instead of the rail fence on his side of the McClaskey lane, and called upon the appellees to assist him in locating the point of division of their lands at the south end of the lane, which was done by the parties hereto, and thereupon the appellant set a post at the south end in such position that a wire stretched therefrom northward to connect with a portion of the fence which had previously been wired would so run as to narrow the lane a few inches in some places where the fence as theretofore constructed was not in a straight line; but the prospective wire fence would not come near the traveled track or interfere with the free use of the lane as it had theretofore been used. When the appellant commenced to make this wire fence, the appellees objected thereto, and claimed that the appellant was encroaching on the lane, without right, and that the appellees had a right of way over the lane. The appellant then claimed that he had a right to build the wire fence where he might wish to do so, and to close up the lane, and denied the right so claimed by the appellees.

The following plat represents the surroundings as they have existed for the last nine years:

McClaskey *v.* McDaniel—37 Ind. App. 59.

In the conclusions of law stated by the court it was held that the appellant is entitled to have his title quieted to the real estate described in his complaint, except that the appellees have a right to use, pass over and travel upon said road known as the McClaskey lane, one-half thereof being upon the land of the appellant, and that the appellant, in erecting the fence upon the west side of the road, was not interfering with the rights of the appellees, who were not entitled to an injunction sought by them in a cross-complaint.

The question presented is one between the owner of land on which such a way is in part located, and persons owning

and occupying other land situated with relation to the way as is that of the appellees, and acquired under such circumstances as are stated in the finding. The case is not one in which it is sought to have a way recorded as a public highway, not less than thirty feet in width, under the statute. §6762 Burns 1901, Acts 1897, p. 192. It is one in which the court refused to quiet the title of the adjudged owner of the land as against the right of the defendants to the use of the way, but adjudged his right to fence in his land from the way substantially as it had been fenced in for many years.

The denial by the board of county commissioners of the application of the appellees did not, as between the appellant and the appellees, amount to an adjudication

1. upon the subject-matter here involved, and conclusively establish the right of the appellant to close up the way so far as it lay upon his land, or conclusively settle the question as to the right of the appellees to continue to use the way as it existed.

Where, in litigation involving the question as to whether a way is a highway, it appears that the way has been used as a public highway for twenty years or more, it

2. must be deemed, for the purposes of such litigation, to be a public highway; "and it is immaterial whether the use is with the consent, or over the objections, of the adjoining landowners. * * * With the expiration of the twenty-years' use * * * the statute intervenes and declares the road to be a public highway regardless of its origin or the mere objections by landowners." *Strong* v. *Makeever* (1885), 102 Ind. 578, 584, and cases there cited.

It clearly appears that the McClaskey lane has been used as a highway. If it can be said that the court, in its special findings, does not state, as an ultimate fact, how

3. long it has been so used with sufficient definiteness to enable the court to determine as a matter of law the existence of a highway by user, as to which we need

not decide, we think that it is sufficiently shown, as between the parties to this action, that the lane is a highway by implied dedication, which arises by operation of law from the conduct of the landowner, and is founded upon the doctrine of equitable estoppel. It is essential to such dedication that the donor shall intend to appropriate the land to the public use, but the intent thus contemplated

4. by the law is not a mere secret purpose. It may be an intent presumed from the visible conduct of the landowner. Individuals as well as the public have the right to act with reliance upon open conduct on the part of the landowner such as would induce an ordinarily prudent man to infer such intent, notwithstanding any hidden or unexpressed purpose in his mind to the contrary. Therefore it is not always necessary to a dedication that the intent to dedicate should actually exist in the mind of the landowner, who in this matter, as in others generally, must be presumed to have intended what his conduct indicates under the circumstances of the case. To constitute irrevocable dedication there must also be acceptance of the donation, but there may be implied acceptance, and where the use of the way as a highway is beneficial to the public, and it has been used for a highway for a considerable period, with the assent of the landowner, and other land has been purchased and improvements made thereon by persons believing the way to be a highway, under circumstances, known to the owner of the way, reasonably calculated to create such belief, and material injury would ensue to such persons if the landowner were permitted to close the way on his premises, the intent to dedicate and the acceptance of the donation will be implied, as between such persons, if the facts be such as under the established principle of law would ordinarily create an estoppel *in pais*.

Acceptance may be shown by public use, without

5. any public work on the road. *Green* v. *Elliott* (1882), 86 Ind. 53; Elliott, Roads and Sts. (2d

ed.), §160.   "No specific length of time is necessary to con-
stitute a valid dedication; all that is required is the assent
of the owner of the soil to the public use, and the actual
enjoyment by the public for such a length of time that the
public accommodation and private rights would be ma-
terially affected by a denial or interruption of the enjoy-
ment."   2 Dillon, Mun. Corp., §631, quoted in Elliott,
Roads and Sts. (2d ed.), §161.   See, also, *Campbell* v.
*O'Brien* (1881), 75 Ind. 222, 225; *State* v. *Hill* (1858),
10 Ind. 219; *Ross* v. *Thompson* (1881), 78 Ind. 90; *Faust*
v. *City of Huntington* (1883), 91 Ind. 493; *Carr* v. *Kolb*
(1884), 99 Ind. 53; *City of Indianapolis* v. *Kingsbury*
(1885), 101 Ind. 200, 51 Am. Rep. 749; *Town of Marion*
v. *Skillman* (1891), 127 Ind. 130, 11 L. R. A. 55; *Pitts-
burgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101.

The case before us, so far as the proceedings therein
affect the appellant adversely, is not one in which the
appellees took the initiative, but is one in which the appel-
lant sought to have his title quieted against the appellees
as to the future use of the way so far as it is located on
his land.

Besides all the other indications of intention on the part
of the appellant that the lane should be a highway, it is to
be observed that his action out of which arose the contro-
versy which immediately preceded the bringing of this
suit was itself entirely in harmony with such intent; for
he was merely reconstructing the fence on the west side of
the lane, without attempting to narrow the way substan-
tially.   We will not recapitulate the facts already lengthily
set forth, by way of abridgement of the special findings.
We think that, for the purposes of this case, they would
not authorize us to conclude that the court erred in its
conclusions thereon.   The facts seem sufficient to create
an estoppel.

Judgment affirmed.